UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

               Plaintiff,

v.

HUSSEIN MOHAMED FARAH,

               Defendant.

**PLEA AGREEMENT AND
SENTENCING STIPULATIONS**

1.    The United States of America and the defendant Hussein Mohamed Farah agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

2.    **Charges**. The defendant agrees to plead guilty to Count 1 of the Information, which charges the defendant with wire fraud, in violation of Title 18, United States Code, Section 1343. The defendant fully understands the nature and elements of the crime with which he has been charged.

3.    **Factual Basis**. The defendant is pleading guilty because he is in fact guilty of Count 1 of the Information. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

From in or about February 2021 through in or about January 2022, the defendant knowingly participated in a scheme to defraud the federal child nutrition program, a program designed to provide free meals to children in need. The defendant

1

and his co-conspirators obtained, misappropriated, and laundered millions of dollars in program funds that were intended as reimbursements for the cost of serving meals to children. The defendant exploited changes in the program intended to ensure underserved children received adequate nutrition during the Covid-19 pandemic. Rather than feed children, the defendant and his conspirators took advantage of the Covid-19 pandemic—and the resulting program changes—to enrich themselves by fraudulently misappropriating millions of dollars in federal child nutrition program funds.

As part of the scheme, in or about February 2021, the defendant signed paperwork applying for participation by New Vision Foundation, a St. Paul-based nonprofit he controlled, in the Federal Children Nutrition Program under the sponsorship of Feeding Our Future. The defendant registered New Vision Foundation with the Minnesota Secretary of State in April 2016 and, in February 2021, was that entity's Executive Director.

The defendant submitted his application together with Aimee Bock, Feeding Our Future's executive director. About six weeks later, the defendant began submitting reimbursement claims to Feeding Our Future for meals purportedly served to children through New Vision in St. Paul. In March 2021, the defendant emailed meal counts to Feeding Our Future claiming that at the New Vision site, he and his co-conspirators served between about 3,000 and 6,000 meals to children every day. As the defendant knew, these claims were fraudulent and inflated.



In support of these and other claims, the defendant and his co-conspirators prepared and submitted fraudulent meal counts and invoices. For example, in November 2021, the defendant submitted to Feeding Our Future via email claims for the New Vision site. That submission included fraudulent and inflated meal counts, which claimed that New Vision had served over 30,000 meals to children each week in October 2021. That submission also included fraudulent and inflated invoices from Ahlan Restaurant, which purportedly represented more than $315,000 worth of food provided by Ahlan to New Vision to feed kids.

As another example, as alleged in Count 1 of the Information, on July 29, 2021, the defendant emailed Aimee Bock fraudulent meal counts which claimed that New Vision had served over 50,000 meals to children each week in May 2021. Each meal count in that submission was signed by Hussein Farah. The defendant knew those meal counts were false. That emailed traveled interstate.

In addition to meal counts and invoices, the defendant and his co-conspirators also prepared and submitted to Feeding Our Future fraudulent attendance rosters. As part of the scheme, the defendant emailed to Feeding Our Future fake attendance rosters that purported to identify the names of thousands of children who received food from the New Vision Foundation site between about March and June of 2021.

In about September 2021, Hussein Farah and New Vision began purportedly serving meals to children from a second New Vision Foundation site—this one in Waite Park, Minnesota. From about September through November 2021, New Vision Foundation claimed to feed about 200,000 meals to children from the purported Waite

3

Park site and submitted claims to Feeding Our Future for about $500,000. MDE paid out those approximate $500,000 in claims to Feeding Our Future, which remitted about $453,000 of that total to New Vision.

Rather than use fraudulently obtained money to serve meals or feed children, the defendant and his conspirators fraudulently misappropriated much of it. The defendant transferred hundreds of thousands of dollars to himself and other co-conspirators, including to entities involved in the scheme such as Ahlan Restaurant and Star Distribution.

Ultimately, based on fraudulent claims throughout the conspiracy, including those contained in the email submissions described above, the defendant and his co-conspirators caused a loss of approximately $3 million to the Federal Child Nutrition Program in reimbursements for meals purportedly served to children. Feeding Our Future received more than $280,000 in administrative fees for sponsoring New Vision Foundation's fraudulent participation in the program.

4.    **Waiver of Indictment**. The defendant waives the right to be charged by Indictment.  The defendant agrees to sign a written waiver of this right at the change-of-plea hearing.

5.    **Waiver of Pretrial Motions**. The defendant understands and agrees that he has certain rights to file pre-trial motions in this case. As part of the plea agreement, and based upon concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to

4

file any pre-trial motions in this case. The defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

6.    **Waiver of Constitutional Trial Rights.** The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

7.    **Additional Consequences**. The defendant understands that as a result of his conviction, he could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office. If the defendant is not a United States citizen, as a result of a plea of guilty, the defendant may be removed from the United States, denied citizenship, and/or denied

5

admission to the United States in the future. The defendant has discussed with his attorney the punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and still wants to plead guilty in this case.

8.    **Statutory Penalties**. The parties agree that wire fraud, as charged in Count 1 of the Information, carries statutory penalties of:

a.    a maximum term of imprisonment of 20 years in prison;

b.    a supervised release term of up to three years;

c.    a fine of up to $250,000, or twice the gross gain or loss from the offense, whichever is greater;

d.    assessment to the defendant of the costs of prosecution as authorized by 28 U.S.C. §§ 1918(b) and 1920; and

e.    a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A).

9.    **Revocation of Supervised Release.** The defendant understands that if he were to violate any supervised release condition while on supervised release, the Court could revoke his supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that he be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

10.    **Guidelines Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea

agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

a.  Base Offense Level. The parties agree that for Count 1 the base offense level is 7. U.S.S.G. § 2B1.1(a)(1).

b.  Specific Offense Characteristics. The parties agree that for Count 1 a **16-level** enhancement applies pursuant to Guidelines § 2B1.1(b)(1)(I) because the loss was more than $1.5 million but not more than $3.5 million. The parties agree that the offense level should be increased by **2 levels** because the offense involved conduct described in 18 U.S.C. § 1040 (Fraud in Connection with a Major Disaster or Emergency Benefits). The parties further agree that the offense level should be increased by an additional **2 levels** because the offense involved a misrepresentation that the defendant was acting on behalf of a charitable or educational organization, pursuant to U.S.S.G. § 2B1.1(9)(a). The parties agree that no other specific offense adjustments apply.

c.  Chapter 3 Adjustments. The parties agree that, other than acceptance of responsibility, no Chapter 3 adjustments apply.

d.  Acceptance of Responsibility. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of his intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to

U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw his guilty plea after it is entered.

e.   Criminal History Category. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

f.   Zero-Point Offender Adjustment. Because the defendant has zero criminal-history points and no disqualifying conduct, the parties agree the defendant qualifies for a 2-level adjustment under U.S.S.G. § 4C1.1.

g.   Guidelines Range. If the adjusted offense level is **22**, and the criminal history category is I, the Sentencing Guidelines range is **41 - 51** months of imprisonment.

h.   Fine Range. If the adjusted offense level is **22**, the Sentencing Guidelines fine range is **$15,000** to **$150,000**. U.S.S.G. § 5E1.2(c)(3).

11.   **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable guideline factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines. If the Court determines that the

8

applicable guideline calculations or the defendant's criminal history category are different from that stated above, such a determination shall not provide a basis for the parties to withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

12. **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make a motion for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable Guidelines range. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

13. **Special Assessment**. The Sentencing Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted. U.S.S.G. § 5E1.3. The defendant agrees that the special assessment is due and payable at the time of sentencing.

14. **Restitution Agreement**. The defendant is required to pay mandatory restitution to victims and in an amount to be determined by the Court. He agrees to pay the amount to the victims as determined at sentencing. The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of his crime. The defendant and government agree that the restitution amount to impose against the defendant is $471,000.00.

9

15.    **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the Defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of fines and/or forfeiture ordered by the Court. The Defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate his ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

16.    **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to wire fraud, as charged in Count 1 of the Information.

The United States reserves its right to seek a money judgment forfeiture, to forfeit substitute assets, and to forfeit additional directly forfeitable property.

The defendant agrees that the United States may, at its option, forfeit the Property through civil, criminal or administrative proceedings, waives any deadline

or statute of limitations for the initiation of any such proceedings, and abandons any interest he may have in the property. The defendant waives all statutory and constitutional defenses to the forfeiture and waives any right to contest or challenge (including direct appeal, habeas corpus, or any other means) such forfeiture, directly or through any company he owns or controls, on any grounds.

The parties agree to and the defendant consents to the entry of a money judgment forfeiture for restitution in the amount of $471,000. The defendant will receive a credit against the money judgment forfeiture for the net value of all property that is forfeited from him in this matter. The United States reserves the right to seek forfeiture of substitute assets and any additional directly forfeitable property.

17.    **Waivers of Appeal and Collateral Attack.** The parties hereby waive the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to: the defendant's waiver of the right to appeal guilt or innocence, any issues relating to the negotiation, taking or acceptance of the guilty plea, the sentence imposed or any issues that relate to the calculation of the Guidelines range, the supervised-release term and conditions imposed, any restitution obligations, and the constitutionality of the statutes to which the defendant is pleading guilty.

The parties agree, however, that excluded from this waiver is an appeal by the defendant of the substantive reasonableness of a term of imprisonment above 51 months' imprisonment. The parties further agree that nothing in this agreement precludes or waives an appeal by the government of the substantive reasonableness of a term of imprisonment below 41 months' imprisonment.

11

The defendant also waives the right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. This collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

18.    **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

19.    **Complete Agreement.** This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. By signing this plea agreement, the defendant acknowledges: (a) that the defendant has read the entire agreement and has reviewed every part of it with the defendant's counsel; (b) that the defendant fully understands this plea agreement; (c) that no promises, agreements, understandings, or conditions

12

have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; (d) that the defendant is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the defendant has entered into this plea agreement freely, voluntarily, and knowingly; and (f) that the defendant's decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

Dated:  8/26/25

JOSEPH H. THOMPSON
Acting United States Attorney


BY:    MATTHEW S. EBERT
HARRY M. JACOBS
DANIEL W. BOBIER
Assistant United States Attorneys


Dated:  8/26/25

HUSSEIN MOHAMED FARAH
Defendant


Dated:  8/26/2025

ANDREW WILSON
Counsel for Defendant

13