UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 25-297 (NEB)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HUSSEIN MOHAMED FARAH,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **GOVERNMENT'S POSITION REGARDING SENTENCING** |

The United States of America, by and through its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, and Matthew C. Murphy and Rebecca E. Kline, Assistant United States Attorneys, submits the following sentencing memorandum and respectfully requests that the Court impose a sentence of 41 months in prison.

Defendant Hussein Farah was the executive director of a non-profit organization called New Vision Foundation that taught coding to minority children. In February 2021, Farah enrolled New Vision Foundation in the Federal Child Nutrition Program under the sponsorship of Feeding Our Future. According to New Vision Foundation's program application, children would be provided meals at New Vision Foundation's office, located at 860 Vandalia Street in St. Paul, a light industrial building near the Midway railyard, which also housed an electronics recycling facility.



*Figure 1: 860 Vandalia St., St. Paul, Minnesota*

Within weeks of enrolling New Vision Foundation in the Federal Child Nutrition Program, Farah claimed his organization was serving meals to more than 3,000 children per day, seven days a week. He continued to submit such claims throughout the summer and fall of 2021. But workers at the electronics recycling facility said they never saw any children at New Visions Foundation's office—either being served meals or otherwise.

In all, between February 2021 and January 2022, New Vision Foundation submitted reimbursement claims to Feeding Our Future totaling about $3 million. Of that, Feeding Our Future paid out to New Vision Foundation about 2.7 million for meals purportedly served to children. According to New Vision Foundation's accounting records, it did not use that money to purchase food. Instead, Farah directed most of the funds to his co-conspirators, including Ahlan Restaurant,

Campus Trading, and Star Distribution, in exchange for fraudulent invoices used to substantiate New Vision Foundation's bogus meal reimbursement claims. His co-conspirators then paid a portion of the food program money back to Farah in cash. Farah also submitted to Feeding Our Future phony rosters purporting to list the names of thousands of children served meals at the New Vision Foundation site.

Farah was charged by Information on August 4, 2025, with one count of wire fraud. He pleaded guilty approximately one month later, on August 26, 2025.

## SENTENCING RECOMMENDATION

In *Gall v. United States*, the Supreme Court set forth the appropriate sentencing methodology. 552 U.S. 38, 49–50 (2007). The district court should first calculate the advisory Sentencing Guidelines range. *Id*. at 49. After calculating a defendant's advisory Sentencing Guidelines range and hearing from the parties, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and make an individualized assessment based on the facts in arriving at an appropriate sentence. *Id*. at 49–50; *see also United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the appropriate Guidelines range, then evaluate whether a traditional departure is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors.").

### A. Sentencing Guidelines Range

The base offense level is 7 pursuant to Guidelines § 2B1.1(a)(1). (PSR ¶ 45.) The base offense level is increased by 16 levels pursuant to Guidelines § 2B1.1(b)(1)(I)

because the loss amount is greater than $1.5 million but less than $3.5 million. (PSR ¶ 46.) The offense level is increased by another 2 levels pursuant to Guidelines § 2B1.1(b)(9)(A) because the defendant misrepresented that he was acting on behalf of a charitable organization. (PSR ¶ 47.) It is increased an additional 2 levels pursuant to Guidelines § 2B1.1(b)(12) because the offense involved conduct described in 18 U.S.C. § 1040, fraud in connection with a major disaster or emergency benefits. (PSR ¶ 48).

Because the defendant has accepted responsibility for his offense conduct in a timely manner, the offense level is decreased by 3 levels pursuant to Guidelines § 3E1.1(a) and (b). (PSR ¶ 54, 55.) Finally, the defendant is entitled to a 2-level reduction because he meets the zero-point offender criteria set forth in Guidelines § 4C1.1(a). (PSR ¶ 53.) The defendant falls into Criminal History Category I. (PSR ¶ 61.) With a total adjusted offense level of 22, and Criminal History Category I, the defendant's advisory Guidelines range is 41-51 months in prison.

**B. Section 3553(a) Sentencing Factors**

Section 3553(a) requires the Court to analyze several factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a).

**1. Nature and Circumstances of the Offense**

Farah participated in one of the largest fraud schemes in the history of the District of Minnesota, and the single largest Covid-19 fraud scheme in the country. He took money intended to feed children who no longer could get regular, nutritious meals at school, and used it to enhance his lifestyle. He knew he was not entitled to the money and that it was obtained by lying to the government about the number of children he allegedly served at a non-existent meal site. Simply put, he took advantage of a once-in-a-century global pandemic and the generosity of American taxpayers to enrich himself.

**2. History and Characteristics of the Defendant**

Farah was born in Somalia in 1976. He lived in Mogadishu with his parents and 10 siblings until he was 11 years old. After his mother died, the family moved to a Kenya refugee camp, where Farah lived for approximately 7 years. When Farah was approximately 18, he immigrated to the United States.

After living for one year in San Franciso, Farah moved to Washington D.C., where he worked as a cab driver and then for the Jane Goodale Institute. He moved to Minnesota about three years later due to the large Somali community here. Farah opened New Visions Foundation in 2016. He is married and has three children, including one minor child.

**3. Deterrence, Respect for the Law, Just Punishment, and Protecting the Public**

The Court must also consider the need for the sentence to afford adequate deterrence, promote respect for the law, provide just punishment, and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a).

Farah's crime must be viewed in context of the rampant fraud that has plagued Minnesota in recent years. Unprecedented levels of fraud perpetrated on public benefits programs in Minnesota have eroded trust in the government and raised questions about the sustainability of those programs. Too many people, Farah included, participate in this kind of fraud because, as they see it, everyone else is doing it. This cynical view must be stopped. It has undermined and endangered important government programs as well as legitimate nonprofit organizations that rely on donations to carry out actual charitable work.

On the other hand, Faraha's conduct appears to be an aberration in an otherwise law-abiding life. He has no criminal history points and worked for years teaching coding to underprivileged children. Farah also accepted responsibility for his conduct. His behavior is indicative of someone who is unlikely to recidivate.

**4. The Need to Avoid Unwanted Disparities**

Finally, the Court must consider the need to avoid unwarranted disparities. 18 U.S.C. § 3553(a). A low-guidelines sentence of 41 months is not unwarranted. It is entirely consistent with other sentences meted out in this and other federal districts for fraud offenses involving the same level of culpability and loss.

## CONCLUSION

For the reasons stated above, the government respectfully requests that the Court impose a sentence of 41 months in prison.

Respectfully Submitted,

Dated: August 12, 2026,

DANIEL N. ROSEN
United States Attorney

/s/ *Matthew C. Murphy*

BY: MATTHEW C. MURPHY
REBECCA E. KLINE
Assistant U.S. Attorneys