**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
Docket No. 25-297 (NEB)

---

UNITED STATES OF AMERICA,

Plaintiff,

vs.

**DEFENDANT'S POSITION REGARDING SENTENCING**

HUSSEIN FARAH,

Defendant.

---

The Defendant, Hussein Farah, through his attorney Andrew C. Wilson, respectfully requests this Court to recognize policies in the Federal Sentencing Guidelines, including those enumerated at 18 U.S.C. § 3553(a), to depart from the recommended guideline sentence, and to sentence Mr. Farah to a probationary sentence or, alternatively, to serve 6 months in prison.

## SENTENCING CONSIDERATIONS GENERALLY

In *Gall v. United States*, 552 U.S. 38 (2007), the United States Supreme Court clarified the process to be followed in federal sentencing. The first step is to determine the proper Guidelines' range for the defendant's sentence. *Gall*, 552 U.S. at 49. The second step is to consider the factors in 18 U.S.C. §3553(a) and determine whether a departure or a variance is appropriate. *Gall*, 552 U.S. at 49-50,; *United States v. Roberson*, 517 F. 3d 990, 993 (8th Cir. 2008).

The overarching consideration is that the sentencing court "impose a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). As the United States Supreme Court recognized, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518

U.S. 81, 113 (1996). District courts have an "institutional advantage" in making sentencing decisions as "they see so many more Guidelines cases than appellate courts do." *Id.* at 98.

18 U.S.C. §3661 provides that "[n]o limitations shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. §3661. By enacting this statute, "Congress codified the long-standing principle that sentencing courts have broad discretion to consider various kinds of information." *Pepper v. United States*, 562 U.S. 476, 488 (2011); *see United States v. Watts*, 519 U.S. 148, 151 (1997). The United States Supreme Court has emphasized that possession of the fullest information possible concerning a defendant's life and characteristics is "highly relevant—if not essential—to the selection of an appropriate sentence." *Pepper*, 562 U.S. at 488 (citing *Williams v. New York*, 337 U.S. 241, 246 (1949)). "Permitting sentencing courts to consider the widest possible breadth of information about a defendant 'ensures that the punishment will suit not merely the offense but the individual defendant.'" *Id.* (citing *Wasman v. United States*, 468 U.S. 559, 564 (1984)).

**DEFENDANT'S POSITION ON SENTENCING**

Mr. Farah agrees with the guidelines calculation contained within his plea agreement, the PSR, and the Government's position paper. The adjusted offense level should be 22, Mr. Farah falls into Criminal History Category I, and so the advisory Guidelines range is 41-51 months in prison. Considering the factors in 18 U.S.C. §3553(a), however, the Court should determine that a departure or variance is appropriate and impose a probationary sentence or, alternatively, 6 months in prison.

The sentencing goals enumerated in 18 U.S.C. § 3553(a) are: (1) the nature and

circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the guidelines range; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

**a. A probationary sentence avoids an unwarranted sentencing disparity between Mr. Farah and Bekam Merdassa, and a 6-month prison sentence avoids an unwarranted sentencing disparity between Mr. Farah and Zamzam Jama, both defendants with similar records convicted of and sentenced for similar conduct in the same Feeding Our Futures schemes.**

The push toward sentencing uniformity codified at 18 U.S.C. § 3553(a)(6) "does not consist simply of similar sentences for those convicted of violations of the same statute [but] consists, more importantly, of similar relationships between sentences and real conduct." *United States v. Booker*, 543 U.S. 220, 253-54 (2005).

The Court is in the best position to determine how Mr. Farah's real conduct compares to the real conduct of the other defendants it has sentenced stemming generally from the Feeding Our Futures cases. That said, the three examples below firmly support imposition of either a probationary sentence or a sentence of 6 months. In terms of sentencing uniformity, they also appear to frustrate imposition of a guidelines sentence here.

***First,*** Bekam Addissu Merdassa received 2 years of probation after pleading to the same offense as Mr. Farah, one count of conspiracy to commit wire fraud. *See* 0:22-CR-237 (Dkt. 14 – Plea Agreement and Sentencing Stipulations). Per the plea agreement in that file, Merdassa used a non-profit entity that he had previously created called Youth Inventors Lab to carry out his scheme to misappropriate millions of dollars in federal child nutrition program funds. Merdassa

and his co-conspirators enrolled Youth Inventors Lab in the Federal Child Nutrition Program as a purported site serving children meals under the sponsorship of Feeding Our Future. In total, Youth Inventors Lab claimed to have served over 1.3 million meals between December 2020 through June 2021. Merdassa kept approximately 10 percent of the funds Youth Inventors Lab received and he and others transferred millions of dollars from the Youth Inventors Lab bank account to other individuals and entities involved in the fraudulent scheme. "In total, Merdassa and his co-conspirators fraudulently received $3,029,786 in reimbursements from Feeding Our Future." *See* 0:22-CR-237 (Plea Agreement, at 3). The approximately ten percent Merdassa kept became his restitution, which totaled $343,086. *See id.*

The total loss amounts between New Vision Foundation and Youth Inventors Lab are similar (New Vision received approximately $400,000 less than Youth Inventors Lab). Likewise, the restitution amounts between Mr. Farah and Merdassa are similar (Merdassa agreed he owed approximately $100,000 less than Mr. Farah). Like Merdassa, Mr. Farah did not create a shell company solely for the purposes of defrauding the Government but, rather, utilized an otherwise legitimate organization that had already been in existence. Merdassa and Mr. Farah both had zero criminal history scores. They both quickly pled guilty following issuance of an Information.

The difference between their cases, primarily, is that Merdassa qualified for a minor participant reduction, whereas Mr. Farah did not. But that distinction is somewhat of a red herring because Mr. Farah could not qualify for that reduction because he was the only individual charged out of the New Vision Foundation (he was a *sole* participant). New Vision received approximately $300,000 less in fraud funds that Youth Inventors Lab; Merdassa owed restitution totaling approximately $100,000 less than Mr. Farah—the "real conduct" in both cases is quite similar.

*Booker*, 543 U.S. at 253-54. Mr. Farah's agreed-upon restitution amount is 17.4% of the New Visions loss amount ($471,000/$2,700,000 = 17.4%). Merdassa's, comparatively, was 11.3% ($343,086/$3,029,786 = 11.3%). The cases are similar, the defendants are similar, and so the sentence imposed in Merdassa's case appears to support imposition of a similar sentence here. *See* 18 U.S.C. § 3553(a)(6).

***Second,*** Zamzam Jama received a 6-month sentence, and agreed she owed restitution totaling $491,245. *See* 0:22-CR-225 (Plea Agreement, at 8). Jama and her associates established shell companies through which they received and disbursed Federal Child Nutrition Program funds to make expenditures that had nothing to do with feeding children. She utilized the shell company African Heritage LLC to deposit $491,245 in fraud proceeds that were paid by Feeding Our Future to Brava Restaurant. *See* 0:22-CR-225 (Plea Agreement, at 2). But the organization itself—Brava Restaurant—"was paid over $5.3 million in federal child nutrition program funds." *See* 0:22-CR-225 (Government's Position Regarding Sentencing, at 2).

Mr. Farah's restitution of $471,000 is less than Jama's $491,245. His company, New Vision Foundation, also received approximately $2.6 million *less* than Jama's company, Brava Restaurant. Brava Restaurant was paid over $5.3 million and New Vision was paid approximately $2.7 million. Mr. Farah's company was not created solely for the purpose of defrauding the Government, whereas African Heritage LLC *was*. Per the plea agreement in that file, "[Jama] used some of those proceeds to contribute toward the purchase of a home" and also to "pay off a 2021 Toyota RAV 4"—property that had been "derived from . . . wire fraud," in violation of the same statute under which Mr. Farah pled. 0:22-CR-225 (Plea Agreement, at 2, 3). Mr. Farah obtained fraud money—but he is not alleged to have used it to purchase luxury items. In those respects,

Jama's "real conduct" is more severe than Mr. Farah's. Avoiding unwarranted sentencing disparities between Jama and Mr. Farah—who both appear to have similarly clean prior records—appears to support a sentence of 6-months or less (such as a probationary sentence). *See* 18 U.S.C. § 3553(a)(6).

***Third,*** compare Merdassa and Jama to Sharon Ross, who, like Mr. Farah (and Merdassa) pled guilty to one count of wire fraud and was sentenced to 43 months imprisonment on February 7, 2025. *See* 0:23-CR-00082. Ross's 43-month sentence would be a guidelines sentence here, though no party is advocating for the Court to impose a 43-month sentence here. Considering the relationship between Ross's sentence and her real conduct evidences *why* a guidelines sentence in Mr. Farah's case is *not* appropriate. Frankly, Ross agreed to pay restitution of $2,434,360, a number greater than 5 times the magnitude of Mr. Farah's agreed-upon restitution.

In terms of real conduct, the Court should also consider the substantial assistance that Mr. Farah provided the Government in the prosecutions of the Star Distribution fraud. It is not easily gleaned from the record whether any of the other defendants identified above provided such assistance but certainly Mr. Farah's cooperation and assistance falls within the broad spectrum of "real conduct" that the Court should consider in fashioning an appropriate sentence. *Booker*, 543 U.S. at 253-54. That assistance is addressed further below.

**b. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant:**

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."

*Gall*, 552 U.S. 38 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)).

The PSR accurately outlines Mr. Farah's personal background and upbringing. This criminal offense is Mr. Farah's first and only. Until this offense, he lived largely as a model citizen with his wife and three children, epitomizing the American Dream insofar as he was an impoverished immigrant who came to the United States with nothing but a horrific backstory. Without re-stating *ad nauseum* what's contained in the PSR, Mr. Farah's journey to the United States was traumatic and tumultuous and unlike anything the vast majority of other United States citizens are forced to experience in their lives. Respectfully, one notable takeaway from reading about those experiences is that Mr. Farah is resilient. Despite the unique and significant hardships he has experienced, Mr. Farah has maintained a strong vocation to serve others. His American Dream involved starting a nonprofit agency aimed at serving an underserved aspect of an underserved community. There is no question that, before his committed his crime, Mr. Farah was a leader in his community. The fall from that leadership position has fed into the shame he continues to experience related to his wrongdoing and conviction. He has let himself, his family, and his community down.

Unlike many other defendants in the Feeding Our Futures string of cases, though, Mr. Farah's organization—New Vision Foundation—was a legitimate entity long before it was tarnished through affiliation with his crime. Between 2016 and 2024, the organization served over 2,000 young students related to tech literacy/competency. The program began in the Twin Cities alone but expanded to serve students statewide, including in Willmar, St. Cloud, and Rochester. In 2018, Mr. Farah was nominated as a Bush Foundation Fellow for his nonprofit technology work.

His nomination page[1], which is still accessible, states:

> Hussein Farah wants his community to prosper by embracing technology to build financial stability. He believes that equitable access to information technology can drive a more inclusive and harmonious life for all Minnesotans, especially his fellow African immigrants. He seeks to be a forceful advocate for policies, resources and programs that ensure people of color participate in the high-tech sector. To grow into this role and to become a thought leader at the center of the digital ecosystem, he will expand his professional network, broaden his expertise in the field of information technology, pursue leadership training and study organizations with successful track records of attracting immigrant youth to the technology sector.

In 2017, the year prior to receiving the Bush Foundation Fellowship, Mr. Farah was awarded a public policy fellowship from the University of Minnesota's Humphrey School of Public Affairs for his work advocating on behalf of his community for policies in the IT space to help new refugees/marginalized communities.

Mr. Farah has no high school diploma; no four-year degree. He obtained some formal education while living in a refugee camp, but has otherwise taught himself the things he needs to know in order to be as successful as he has been.

Serving others, particularly those in his community, is obviously important to him. Even while this case has been pending, Mr. Farah has continued to volunteer with Somali Parent Academy. As was essentially the goal of New Vision Foundation, Mr. Farah has volunteered with Somali Parent Academy to develop a program that encourages Somali parents to become tech literate in order to encourage their children to be. One of the letters of support submitted along with this memorandum is from the director of that program.

None of this is to diminish Mr. Farah's criminal conduct, but it should provide some

---

[1] https://www.bushfoundation.org/fellows/hussein-farah/

evidence to the Court as to what it can expect from Mr. Farah in the future.

As this Court is further aware, there are numerous cases throughout the country where courts consider lenience in the sentences they impose based in part upon positive characteristics of the defendant including strong family and community support, sincere remorse, a low likelihood to reoffend, amenability to treatment programming, etc. Mr. Farah has many of those generally positive sentencing characteristics.

First, Mr. Farah has a massive network of community support. Attached to this memorandum is a powerful collection of letters of support from family and community members. The authors of these letters of support include a former reporter with the Star Tribune, and founder of the Sahan Journal; a former professor at the University of Minnesota; a principal of an elementary magnet school; an adjunct professor at a law school, who is now an associate professor at the University of Minnesota and director of a nonprofit academy in St. Paul; a 21-year alumni of New Vision Foundation's coding program; a single mother of 5 whose child enrolled with New Vision Foundation's St. Cloud location and whose child is now on the verge of graduating from St. Cloud's technology high school with an interest in pursuing software development; the executive director of the nonprofit (Somali Parent Academy) where Mr. Farah has continued to volunteer; and a single mother of 8 children who explains the benefits her children received from New Vision Foundation and Mr. Farah. There is also a letter to the Court from Mr. Farah's wife discussing Mr. Farah's positive contributions to his family, including that he is a necessary provider for their middle child, who is on the autism spectrum.

None of these individuals dispute or minimize Mr. Farah's wrongdoing. But many have known Mr. Farah for decades—far longer than the Court or counsel for either party—and they all

provide the Court with a unique, invaluable perspective into the caliber person Mr. Farah otherwise is. This is the community that will help Mr. Farah to reintegrate. It is the community that will help to ensure that Mr. Farah never reoffends.

Courts also consider remorse in crafting appropriate sentences. Mr. Farah is genuinely remorseful as his letter to the Court indicates (contained within in the PSR). His allocution to the Court at sentencing will further demonstrate that his remorse is sincere.

Apart from his letter to the Court in the PSR, Mr. Farah's actions demonstrate his remorse. His actions also demonstrate his cooperation with the Court and law enforcement after the initial shock of his involvement with police subsided. On multiple occasions while this case was pending, Mr. Farah voluntarily provided attended meetings with and provided information to the United States Attorney's Office. He spent many hours on multiple days meeting with Assistant United States Attorneys, and agents from the FBI and other federal and state agencies, to aid in their investigation and prosecution of others involved in the Feeding Our Futures schemes. The information he provided played a critical role in the resolution of at least two now-convicted individuals associated with the Star Distribution fraud prosecutions. Without the information he provided, there was a diminished likelihood that those prosecutions would have resulted in convictions or repayment of those fraud funds. Mr. Farah provided that assistance, on multiple days for many hours, with no guarantee whatsoever of obtaining a departure motion from the Government much less lenience of any kind. He did so with no guarantee of leniency from the Court, either, and he did so at risk to himself. Had he provided *any* false information, it would have been a separate and distinct crime and, notwithstanding that risk, Mr. Farah opted to provide that assistance on multiple instances anyway. He did so because of his remorse. He did so because

he was a community leader who knew he let his community down.

Mr. Farah would be a model prisoner during any period of incarceration, but he has been focusing and should continue to focus his efforts on rehabilitating himself and re-establishing himself as a positive force in his community. He is not at all a typical criminal defendant and his personal characteristics weighs in favor of the imposition of a probationary sentence.

**c. The need for the sentence imposed.**

18 U.S.C. § 3553(a)(2) breaks "the need for the sentence imposed" into four subdivisions for the Court to consider. They are: The need (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes of the defendant; and (4) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

There is no objective indication before the Court as to any risk of criminal recidivism. Mr. Farah has no prior criminal history. His prior involvement with police is limited to non-criminal petty misdemeanor traffic offenses. Since this offense, he has been under pre-trial supervision and, as the PSI notes, Mr. Farah "has had no formal or informal pretrial violations." PSR, at 2. Prison does not protect the public any better than probation in this case. Frankly, the *threat* of imprisonment if Mr. Farah were to violate the terms of his probation is a compelling incentive that *better* promotes community safety.

Likewise, there is scant evidence that Mr. Farah is in in need of educational or vocational training, medical care, or other correctional treatment that would be more effectively served in an institutional setting as opposed to in the community. His wife's support letter details some medical

issues and the PSR references Mr. Farah's experiencing withdrawal symptoms after using khat abroad, but if those trigger medical *needs* there is no question they are not better served in an institutional setting than served in the community.

A probationary sentence like Merdassa's would reflect the seriousness of Mr. Farah's offense, it would promote respect for the law, and it would provide just punishment for his offense given the other sentencing factors before the Court. But if the Court is disinclined to impose such a sentence, it should impose a sentence consistent with Jama's – a 6-month sentence. Respect for the law does not mean fear of the law. Frankly, *all* of these Feeding Our Future offenses can be legitimately characterized as serious depending on the definition applied to that. But that does not automatically equate to the legitimacy of a long or even guidelines prison sentence. They occurred in the context of the COVID-19 pandemic, which was also an unprecedented time.

Mr. Farah has demonstrated respect for the law by self-reporting after the Government issued its Information, pleading to an Information, appearing for all court appearances, and promptly offering to provide information to the Government related to his involvement and others in the Feeding Our Futures scheme. He demonstrated further respect for the law by complying with the PSR process, and returning for sentencing. A probationary sentence may very well *encourage* others in the future to provide assistance to the Government or promptly resolve legitimate criminal cases.

In *United States v. Anderson*, the Eighth Circuit affirmed a trial court's issuance of a downward variance because it was just to do so given the "other ways in which the defendant had suffered atypical punishment such as the loss of his reputation and his company . . . and the harm visited upon him as a result of the fact that his actions brought his wife and friend into the criminal

justice system." 533 F.3d 623 (8th Cir. 2008). Mr. Farah's actions have contributed to a growing stigma against other Somali Americans in Minnesota. It is a stigma that is being flamed by the current presidential administration, resulting in many suffering reputational harm by the actions of a few. Mr. Farah is one of the few, unfortunately. Nonetheless, he will continue to suffer atypical punishment in the fact that his actions contributed to that stigma and in that he has lost standing as a community leader because of his conduct.

## CONCLUSION

Application of the 18 U.S.C. § 3353(a) factors and policies recognized in the guidelines support imposition of a probationary term, consistent with the sentence imposed in *United States v. Merdassa*. If the Court is disinclined to impose a probationary sentence in this matter, it should impose a 6-month sentence, which is consistent with the sentence imposed in *United States v. Jama*.

Respectfully submitted,

**WILSON & CLAS**

Dated: 8/13/2026

/s/ Andrew C. Wilson
Andrew C. Wilson
Attorney ID No.: 398583
Wilson & Clas
201 Sixth Street Southeast, Suite 210
Minneapolis, MN 55414
(612) 910-2104
awilson@wilsoncd.com

# Exhibit A

# Letters of Community and Family Support

July 11, 2026

Dear Judge Brasel

I begin with gratitude. Sentencing may be the hardest duty a judge performs. It places the future of one human being in the hands of another. It asks a judge to measure the harm of an offense against the whole of a human life, knowing that a family waits on every word. That task demands extraordinary judgement and compassion. Thank you for taking the time to read letters like this one. The fact that the Court considers them at all reflects a seriousness of purpose that I respect.

I have spent my professional life in the business of verification. I worked as a reporter for Minnesota Public Radio and the Star Tribune. I later founded Sahan Journal and served as its CEO and publisher. In that work, my currency has always been credibility. Credibility is the discipline of saying only what I can stand behind. I hold a master's degree in journalism from Columbia University and an MBA from the Carlson School of Management. In a decade of public life, I have learned to guard my name carefully. I lend it here deliberately, and with full knowledge of why Hussein Farah stands before you.

Let me be plain about this letter's purpose. Hussein pleaded guilty and accepted full responsibility for his conduct. I honor the Court's duty to impose consequences. I write because sentencing asks a harder question than whether a crime occurred.

It asks who the person is in full, and what he is likely to do with the rest of his life. On that question, I offer ten years of firsthand evidence. I believe I am one of many members of the Minnesota civic community offering the Court the same testimony.

I met Hussein in 2016, which was the year I received a leadership fellowship from the Bush Foundation. Even then, Hussein was known in our community as one of its most accomplished professionals. He possessed a specialized background in technology and finance, and he could have spent his career comfortably pursuing high-paying jobs in the booming tech industry of that era. Instead, he chose a harder and more generous path. Two years after we met, Hussein earned a Bush Fellowship of his own entirely on his own merit. The Bush Foundation reserves these fellowships for individuals who possess a demonstrated record of building for others.

What Hussein built was the New Vision Foundation. Its mission was to close the digital divide by teaching disadvantaged youth and young adults coding and digital literacy skills that open doors to high-paying careers. Many of these young people are the children of families who arrived in this country with almost nothing. New Vision Foundation offered a ladder in the most concrete sense because it provided skills, credentials, employment, and economic mobility. Hussein watched the trajectories of entire families simply because a young person walked through that door.

I also experienced Hussein's character directly at a moment when I was the one who needed a ladder. In early 2019, I set out to launch Sahan Journal. Hussein was one of the very first people I asked to stand with me as a founding board member. The early years of that organization were fragile, and a single wrong decision could have ended it. Hussein's financial acumen and steady counsel helped keep the venture alive. Sahan Journal exists today and serves hundreds of Minnesotans with reliable news and information. It exists because Hussein gave his intellect and his time to its foundation while asking for nothing in return. This is true measure of the man I know.

I ask your honor to consider what is at stake beyond punishment. Hussein's story, prior to this case, was in every respect a classic American story. He is an immigrant who mastered technology, finance, started a social enterprise, matured young people into the workforce, and strengthened the civic institutions of his adopted state. These are the core values upon which this country was built.

I also ask your honor to consider what will be lost every month Hussein is unable to do this work. Hundreds of students will lose the chance to learn to code. Future innovators from our community will never discover what they might have become. Careers that should have started will sit waiting. Families that were climbing toward the middle class will stall on the ladder. Young people who would have found a mentor may find the wrong ground instead.

None of these losses will appear in any formal sentencing calculations yet every one of them will be real. Ultimately, every one of these consequences will be carried by young Minnesotans who bear no part in this case.

I hope that the court will weigh his sentence against the whole of his life. That life includes almost two decades of ~~documented~~ documented community service, a nonprofit that changed the futures of young people, a newsroom that exists because of his support, and the genuine accountability he has already ~~be shown~~ shown.

The record of the offense is before you. When Hussein stands before you, I hope the court sees the whole man.

I have known him for ten years. I still believe in him.

Thank you for your time, your wisdom, and ~~the~~ your careful consideration.

Sincerely,

Mukhtar Ibrahim

428 Minnesota Street, #500
St. Paul, MN 55101
651. 983. 1550

July 21, 2026

Dear Judge Brasel,

I begin with gratitude. Gratitude that you have taken time out of your very busy schedule to read my letter on behalf of Hussein Farah. My name is Dr. Om Arora, former professor at University of Minnesota Twin Cities, a business owner, a father, and a 40-years resident of Minnesota. I've known Hussein for more than 20 years and I have a very deep admiration and respect for who he is and what he has done in the name of helping and uplifting the lives of immigrants, refugees and new Minnesotans. I first met him in 2004 when he was working at the African Development Center in the Cedar Riverside neighborhood of Minneapolis. My business was located along Cedar Avenue and to date I still own multiple properties in that neighborhood. I witnessed first-hand Hussein's dedication and desire to help business owners and their families find resources to achieve their American Dream. Through the recession of 2008/2009 and the major disruptions caused by the Metro Blue Line construction through the Cedar Riverside neighborhood in 2011/2012, Hussein was always the first to respond to business owners such as myself who constantly needed help to keep our doors open and provide for our families. I believe that were it not for his selflessness and deep commitment to helping others, most businesses would not have survived those difficult times, and the impact on the families and general community would have been more catastrophic in my opinion.

I reconnected with Hussein again in 2016 when he started New Vision Foundation and was teaching coding classes to middle and high school students at the Bryan Coyle community center in the Cedar Riverside neighborhood. There was a lot of excitement in the neighborhood when his program was introduced and, as a former professor, I was very impressed by his concept of having coding instructors that 100% reflected the students in those coding classes. Most of those

students successfully graduated from high school and found high-paying I.T jobs, and immediately benefited their families.

I was very saddened by the multiple instances of fraud in our Minnesota communities and I know that there is still much that needs to be done to bring back the trust between the government and the communities we live in. I also know that Hussein has pleaded guilty and accepted full responsibility for his conduct. I hope you will look at him the way I still look at him, as someone who has dedicated more than 20 years of his life to helping others, someone that worked tirelessly to bring economic prosperity to disadvantaged communities, and someone who I know dedicated the last 10 years to give hope to our youth as they navigated the digital world.

I kindly ask Your Honor to consider what is at stake beyond punishment and weigh his sentence against his whole life. And I'm very thankful for your careful consideration.

Sincerely,

Dr. Om P. Arora
1748 Glenview Ave
Arden Hills, MN 55112

Tel: 612-333-6666

5708 Jefferson Street NE,
Fridley, MN 55432
Tel. 612-227-3933

July 31, 2026

Re: Hussein Farah

Dear Judge Brasel,

Thank you very much for taking the time to read my letter on behalf of Hussein Farah. My name is Dr. Abdisalam Adam and I'm providing this letter of support for Hussein Farah in my personal capacity, and not in an official role for my organizations. I have known Hussein Farah for over fifteen years as a community and non-profit organizational leader.

I have been a community leader and an educator for over thirty years in the Twin Cities. I'm currently the principal of the East African Magnet School, a Pre-K through Grade 8 St. Paul Public School that focuses on the languages, history, and cultures of East Africa. I have been in this role since May 2023. Prior to that, I was an assistant principal for five years at Highland Park Senior High School in St Paul. I have also served as a School Board member in Fridley Public Schools for five years.

I'm also an Imam and a Board member of Dar Al-Hijrah Mosque in the Cedar-Riverside neighborhood of Minneapolis where I have been engaged in community, family, and youth services since 1996.

I first met Hussein in 2010 when he was working as a co-founder of the African Development Center in Minneapolis, helping African immigrants new to the state integrate their lives with the general population through business development loans, home ownership training and financial literacy classes. I was impressed by his passion and desire to help new immigrant and refugee families achieve their American dreams. I reconnected with him in 2016 when he introduced his new organization, New Vision Foundation to me and offered to bring after-school coding and digital literacy classes to both Highland Park Senior High School and Highland Park Middle School in St. Paul Public Schools. I saw first-hand how inspiring this program was to the students that participated and how much of a role-model and mentor Hussein and his staff were to these students that found new belief and desire to graduate and seek higher paying jobs in the information technology sector. Some of those graduates of the coding classes are now

Minnesota Da'wah Institute

Minnesota Da'wah Institute
605 Fairview Avenue North, Saint Paul, MN 55104
Email us: info@www.mndawah.net
Website: www.mndawah.net

8/6/2026

Dear Judge Brasel:

I am Imam/Dr. Hassan A. Mohamud, Imam of Masjid Dawah of St. Paul, MN. I was also adjunct professor of Comparative Islamic and American laws at William Mitchell College of Law. I am now associate professor at Islamic University of Minnesota in Minnesota. I also teach Islamic studies courses at Minnesota Dawah Institute. I am also president of United Mosques of America known as UMA. In addition, I am Branch Director of Islamic University of Minnesota and director of Full-time Dawah Academy K-12, school in St Paul, MN.

I have known Hussein Farah since 2004. Mr. Farah was a member of parent group of our Dawah weekend School where his two sons attended for years. He was the most active and lead of Dawah parent group. Our week-end school teaches our children basic Arabic language, Quran, citizenship and discipline. Mr. Farah was one of the best examples as a father, showing us how supporting and caring he was to his two children. One of his sons was on the autism spectrum and depended heavily on him. He showed us high level of caring to his son to make him a successful student. He was ever present with his disabled son to make sure that he receives the proper care he needed.

In addition, Mr. Farah had expertise in Computer Coding and Information Technology, which made him a pillar of support to run our office smoothly. He helped our youth to prepare them to have basic computer skills to get jobs in Minnesota when our youth unemployment rate was very high.

Mr. Farah has been one of the big donors until now to fund our services to the families and youth. Our center is a non-profit organization based on members' donation to run the activities of the Center. In addition, the center is under mortgage from Minnesota financial institutions.

Mr. Farah has been very supportive when it comes helping our youth to become productive citizens in Minnesota. He has been volunteering for many years with our weekly Thursday leadership and youth activities to prevent them from joining gangs and bad groups or becoming drop out students. He has been donating to funds that help the youth to avoid becoming drug users or addicts. His generosity is also known in other mosques and religious centers in Minnesota that aim to become a great place of peace and sources of basic life services including spiritual needs.

Minnesota Da'wah Institute
605 Fairview Avenue North, Saint Paul, MN 55104
Email us: info@www.mndawah.net
Website: www.mndawah.net

I am humbly asking Your Honor to consider all these necessary and critical roles that Mr. Farah plays in his family, community and America at large. He has positively affected the lives of so many youths in our community, and has generously used his financial resources and expertise to build and grow our infrastructure as a mosque and community center. This, in turn, has allowed us to serve so many other families within our community. Mr. Farah is one of few in our community who wears multiple hats to provide necessary services to our community and has a track record of almost 20 years to prove. He continues to be a role model and mentor for our youth and I believe his role will continue to be very critical in the months and years to come as our youth continue to seek spiritual guidance to find peace and achieve their American Dream.

Should you have any question please contact me at xasanjaamici@gmail.com.

Sincerely,

Imam/Dr. Hassan Ali Mohamud, J.D. & Ph.D.
Imam of Minnesota Da'wah Institute and Associate Professor of Islamic University of Minnesota

Nimca Ahmed
3540 West St Germain
St Cloud, MN 56301
Phone: (320) 224-5228

August 8, 2026

Dear Judge Brasel,

Thank you for your time in reading my letter on behalf of Hussein Farah. My name is Nimca Ahmed and I am a single mother of five children living in St Cloud, MN. I was first introduced to Hussein in 2021 when I was looking for a program to enroll my child Munir Mohamed who was in middle school at that time. He was struggling at school and needed something that would excite him about school. I enrolled him to the coding and digital literacy classes offered by New Vision Foundation after meeting with Hussein. This ended up being the best thing to have ever happened to my son Munir. He loved the program so much and improved his grades a lot as he graduated from middle school and went to high school.

Today my son Munir is about to graduate from Tech High School in St Could and wants to become a software engineer as his professional career. I am forever grateful to Hussein for what he did for my son. He guided him, mentored him and pushed him to do his best and become the best version of himself. Munir needed someone to show him what his potential was, and Hussein became that person. There is no better feeling for me as a mother than to see the success of your children and how bright their future is. Munir's future is now so much brighter than I could ever imagine and I'm very thankful to Hussein for bringing the coding program to our community in St Cloud.

I am humbly asking you, your honor, to consider the impact Hussein had on my son Munir, and the impact of other St Cloud children, that benefited from Hussein's mentorship and guidance at a crucial time in their development. I pray that Hussein continues with the coding and digital literacy program so that the future of our children continues to shine brighter in St Cloud.

Yours Sincerely,

Nimca Ahmed

August 1, 2026

Dear Judge Brasel,

Thank you for your kindness and genuine consideration for reading community support letters like mine on behalf of Hussein Farah.

My name is Mulki Hussein and I am the Founder and Executive Director of Somali Parent Academy (SPA). We envision a future where every Somali parent is fully equipped with the knowledge, skills and resources necessary to nurture and guide their children towards a successful and fulfilling life. As a mother of six children, and a respected community leader in various leadership positions for the past 30 years, I have weighed my words very carefully in how I describe Hussein and my relationship to him.

I have known Hussein for more than 20 years. We both were co-founders of the African Development Center (ADC) in 2003. For almost 10 years, I saw first-hand Hussein's commitment, passion and overwhelming desire to uplift the lives of new immigrants and refugees to Minnesota through our business development, homeownership and financial literacy programs. We were working more than 80 hours per week during the infancy stage of ADC and Hussein, even as a newly married husband and father, never waivered in his desire to help others, even at his own cost. When his work was receiving awards at the city, state and national levels, Hussein remained humble and grounded as he always reminded everyone that there was so much more that still needed to be done to help new Minnesotans achieve their American Dream.

I remained in touch with Hussein during his years at New Vision Foundation and was very grateful for the vision he had of uplifting the youth and empowering them in this digital economy we live in. He created a program that was non-existent in our community and gave hope to almost two thousand youth and young adults through his coding and digital literacy classes.

Since the beginning of this year, Hussein has been volunteering at SPA and helping the organization on both the administrative and programming side. He volunteered his time and helped me in my role as the Executive Director of SPA, and also helped SPA design a digital literacy program for parents of the public charter schools that SPA works with. Hussein believes that parents that have a good understanding of the digital environment are more likely to encourage their children to pursue careers in technology and STEM-related fields in college. He has generously shared with SPA his more than 20 years of experience in nonprofit management and has helped SPA in ways that we can't even quantify. Beginning this new academic year of 2026/2027, Hussein will continue to volunteer with SPA if given the opportunity to do so and I'm hoping that your honor will grant SPA and the community we serve the opportunity to continue to benefit from Hussein's vision, knowledge and passion of uplifting others.

I was very saddened by the many instances of fraud that our community has had to deal with in the past few years, and I know that Hussein has pled guilty and taken full responsibility for his actions. There is so much more that needs to be done to restore the trust between our community and all other relevant stakeholders. As you weigh what appropriate sentencing he deserves for his actions, I am pleading with you, your honor, to consider the Hussein I have known for more than 20 years. Someone that, until this very moment, has dedicated his life to helping others, and someone that has positively affected so many young lives in our state, an outcome that will have so many positive ripple effects in the years to come.

Thank you for your kindness and careful consideration,

Yours Sincerely,

Mulki Hussein

Mulki Hussein

Executive Director

Somali Parent Academy (SPA)

1701 American Blvd E, Suite 16

Bloomington, MN 55425

mhussein@spaminnesota.org

July 16, 2026

Dear Judge Brasel,

I am very thankful for the time you are taking to read my letter on behalf of Hussein Farah. My name is Sucad Ali and I am a single mother of 8 children living in Waite Park, Minnesota. I first met Hussein in 2021 when New Vision Foundation started their coding program in St Cloud. Raising eight children by myself has been very hard on me and I always worked hard to find resources and activities that could benefit my children. My daughter Zamzam Ibrahim and my son Yacqub Ibrahim first registered for the coding classes when they were in middle school and they are now about to graduate from Tech High School in St Cloud. They were in the coding program from 2021 until 2025. I witnessed first-hand the transformation of Zamzam and Yacqub as they struggled in middle school before they first joined the coding program, to now being highly motivated students with good grades and looking forward to graduating high school and going to university for either engineering or medical degrees.

I am extremely grateful to Hussein for bringing the coding program to our community in St Cloud and being a mentor and a father-figure to my two children. He gave them hope and challenged them to be the best version of themselves. Their future is now very bright and I am forever thankful to him for that.

I am kindly asking your honor to consider this as you weigh the consequences of Hussein's actions. He has given our children a very strong sense of belonging and a desire to do their best, and I am praying that he is able to come back and teach my younger children and the other children in our community who will also benefit tremendously if he is allowed to come back and continue the coding program.

Sincerely,

Sucad Ali
811 7th Street S
Waite Park, MN 56387
Phone: (414) 736-7065

Idiris Muumin
9447 Wentlock Road
Woodbury, MN 55125

July 25, 2026

Dear Judge Brasel,

My name is Idiris Muumin and I'm 21 years old. Thank you for taking the time out of your very busy schedule to read my letter on behalf of Mr. Hussein Farah. I first joined New Vision Foundation's coding program in 2019 when I was a middle school student at Lake Middle School in Woodbury, MN. As I graduated from middle school and joined Woodbury High School, my grades were not very good and I was struggling academically. Mr. Farah never gave up on me. He encouraged me to continue the coding classes as they gave me skills in problem solving and critical thinking. He was my mentor and role model and pushed me to always give my best and never to give up in my journey to achieve academic excellence.

In 2022 I was offered a paid summer internship at New Vision Foundation. This experience gave me a glimpse of what life meant in the corporate world and Mr. Farah was always there to guide and advice me. It was a life-changing experience that motivated me to push myself even harder. I graduated from high school in 2023 as one of the best students in my graduating class at Woodbury High School. I was admitted to the University of Minnesota in the Twin Cities to pursue a degree in Bachelor of Science in Computer Science and graduated in May 2026, one year ahead of normal schedule.

I am now working at the Metropolitan Council as a Development-Security-Operations Intern and my full-time position with them is already guaranteed. This is a very promising entry into my professional career and the salary that I will be receiving will benefit me and my large family in so many ways.

I can say with full confidence that my life trajectory would have been very different if I had not been introduced to the coding program offered by Mr. Farah and his organization when I was

in middle school. He continues to be my mentor and role model up to this point in time as he always checks up on me and offers me guidance and advice during our monthly one-on-one meetings. Words are not enough to express how I feel about him and how grateful I am that he is still in my life, came to my life at an early age and never gave up on me along the way!

Sincerely,

[signature]

Idiris Muumin

**Hanan Health LLC**
Tel: (651)381-8720
Fax: (612) 500-4721
Email: info@hananhealthllc.com
7/31/2026

**Character Witness Statement for Court For Hussein Farah (D)B:11/1/1976)**

I, Asisat O. Ashagbe, am a licensed Psychiatric Mental Health Nurse Practitioner and Board-Certified Family Nurse Practitioner in the state of Minnesota. I serve as a provider at Hanan Health LLC. I have been working with Hussein Farah (DOB: 11/1/1976) in a clinical capacity since June 2, 2025. My interactions with Mr. Farah has been within the scope of providing mental health evaluation and treatment.

Mr.Farah carries diagnoses including Post-Traumatic Stress Disorder (PTSD), Major Depressive Disorder, Panic Disorder, and Psychophysiological Insomnia, with other comorbid conditions related to his clinical history.During the course of care, I have observed Mr. Farah is cooperative, respectful, and engaged in treatment He has demonstrated a willingness to follow clinical recommendations, attend scheduled appointments, and participate in care to the best of his ability.

Mr. Farah has demonstrated insight into his condition and has made consistent efforts toward improving his mental health and overall functioning. These efforts include participation in therapy, adherence to prescribed medications, and the development and use of coping strategies to manage symptoms.It is important to recognize that mental health conditions can affect behavior, emotional regulation, and stress tolerance. However, based on my professional observations, Mr.Farah has made ongoing and meaningful efforts to manage these challenges responsibly.

Based on my direct clinical interactions, I can state that Mr. Farah has demonstrated characteristics consistent with responsibility, cooperation, and a commitment to personal improvement.This statement is based solely on my professional observations within the scope of treatment and is not intended to provide legal conclusions or opinions outside of my clinical role.

I declare that the above statement is true and correct to the best of my knowledge.

Sincerely,

A.AshagbeAPRN

Asisat O. Ashagbe, PMHNP-BC, FNP-BC, APRN, CNP
CNP #4931

SASSA

**Somali American Social Service Association**

1700 N Broadway Suite 152 A • Rochester, MN 55906

August 3, 2026

Dear Judge Brasel,

Thank you for your time and consideration in reading my letter on behalf of Hussein Farah. My name is Omar Nur. I am the Executive Director of Somali American Social Service Association (SASSA) in Rochester, Minnesota. SASSA is committed to rebuilding and empowering immigrant communities in Olmsted County and across Minnesota. Since 2012, we have been working to address challenges in education, health, housing, youth development and small business growth.

I have known Hussein as a husband, father and community leader since 2005 when he was a cofounder of the African Development Center (ADC) in Minneapolis. He was always passionate about uplifting those who were less fortunate within our community and he was highly regarded within the immigrant and refugees' communities in the Twin Cities and Greater Minnesota as a tireless advocate for those in need.

In early 2022, Hussein reached out to me with a proposal to introduce coding and digital literacy classes for middle school and high school students in Rochester as part of New Vision Foundation's expansion into Greater Minnesota. This was an extremely important and highly needed program for the youth and young adults that we served in Rochester because no such program existed prior to this. I observed first-hand how Hussein and his team gave hope to young people who were not sure whether high-paying information technology and other STEM-related careers were for them or not.

SASSA
**Somali American Social Service Association**
1700 N Broadway Suite 152 A • Rochester, MN 55906

Between 2022 to 2025, more than 100 youth, mostly middle school students from low-income families, participated in coding and digital literacy classes and received their own free laptops to take home. Hussein was a role-model and mentor to most of these students as he and his team pushed the program participants to work hard and see endless possibilities ahead in their lives. Almost all participants graduated from the coding program offered by New Vision Foundation and were also highly motivated to graduate from high school and pursue high-paying careers in information technology and other STEM careers.

I know that Hussein has taken full responsibility for his action and pled guilty. I am writing this letter to give you a more comprehensive picture of who he is as you determine what consequences he should face. I am humbly requesting that you see him the way hundreds of youth and their parents in Rochester see him, and how I see him as someone I have known for more than 20 years. Hussein has positively impacted so many lives in all these years that I have known him and I know for sure that so many other lives will also be positively affected if he is allowed to continue with his work. I hope that your honor will weigh his sentence against the whole of his life.

Thank you for your kind consideration,

Sincerely,

Omar Nur
Founder & Executive Director
Somali American Social Service Association
507-9905289
onur@sassamn.org

Abdirizak "Zack" Mahboub
516 6th Street SW
Willmar, MN 56201

August 3rd 2026

Dear Judge Brasel,

Thank you for your consideration and your time in reading my letter on behalf of Hussein Farah. My name is Abdirizak Mahboub. I am a business owner, community advocate and the Owner of Midtown Plaza in Willmar where Mr. Farah runs his youth program.

I first met Hussein in 2010 when I was the Executive Director of the West Bank Coalition in the Cedar Riverside neighborhood of Minneapolis. At the time, Hussein was working as a co-founder of the African Development Center (ADC) and was the lead individual behind the extraordinary impact the organization was having in the African immigrant community in Minneapolis. Hussein received multiple awards from both the city of Minneapolis and State of Minnesota for developing and implementing business development, home ownership and financial literacy programming that positively affected new immigrant and refugee families.

I reconnected with Hussein in 2018 when he was selected as a Bush Fellow for his work with New Vision Foundation. I congratulated him for this prestigious achievement because, as a past Bush Fellow myself, I knew that this selection meant a lot for his new organization and had the ability to uplift a whole new generation of young adults into the high-paying digital economy. It was at this time that Hussein expressed his desire to expand his programming to the city of Willmar where I resided. I was impressed by his commitment and desire to reach out to marginalized communities in Greater MN. After almost two years of planning and interruption caused by the COVID pandemic, New Vision Foundation opened their Willmar office at Midtown Plaza in January 2022. From 2022 to 2025, more than 100 youth, mostly middle school students from low-income families, participated in coding and digital literacy classes and received their own free laptops to take home. I saw first-hand how excited the youth were while they were attending these free classes, and how grateful the parents were to see Hussein and his team become role models for their children. Almost every participant graduated from the program with an aim of graduating from high school and a desire to choose a technology-related field in college.

I know that Hussein has accepted full responsibility for his conduct and pled guilty. The purpose of my letter is to give you a complete picture of who he is as you move towards determining what the consequences of his actions should be. I kindly ask you to see him as how my community here in Willmar, and the general immigrant and refugee communities in Minnesota sees him. For almost two decades he was at the forefront in bringing resources that uplift immigrant and refugee families in Minnesota and give them a chance to participate in the American dream. Hundreds of young lives across Minnesota have been forever changed because they were mere mentored by Hussein and graduated from the coding classes offered by New Vision Foundation. And my fear is that many more young lives will lose out on this opportunity if Hussein is unable to return to work and continue to build his organization. This loss will be a loss that will be felt for many years to come as global economies turn to technology and A.I, and may contribute to widening racial income disparities in our state of Minnesota.

I hope that the Court will weigh his sentence against the whole of his life, that includes almost two decades of dedicated community service, a selflessness and kindness shown in each young life he has mentored and guided.

Thank you for your kind consideration,

Sincerely,

Abdirizak Mahboub

Sofia Aden
620 Sutherland Drive
Woodbury, MN 55129

August 10, 2026

Dear Judge Brasel,

Thank you for your kindness in taking the time to read my letter on my behalf of my husband Hussein Farah. My name is Sofia Aden. I am a Registered Nurse (RN) and have been working in the healthcare sector in Minnesota as a primary caregiver for the past 16 years. I have a Bachelors degree in Nursing. Hussein and I were married in 2004 and have remained happily married for the past 22 years. We have three children, two sons and a daughter. Our oldest son is called Muhsin Mohamed and he is 21 years old. He is now in his final year at the University of Minnesota Carlson School of Business Management, taking a major in Business Administration and a minor in Computer Science. Our second born son is called Khalid Mohamed. He is 19 years old and was diagnosed with autism when he was 5 years old. He graduated from Stillwater High School last year and is taking college classes at Century College in St Paul. Our last born is called Munira Mohamed and she is 11 years old and just about to start middle school at Oakland Junior High, a Stillwater public school.

Your honor, my husband Hussein is a very loving and dedicated husband to me and father to our children. He has dedicated every single minute outside of work to raise our children and give them the best upbringing they could ever have. He always remembers the hardship he had growing up during the civil war in Somalia and the years he spent in a refugee camp in Kenya and uses those memories to positively upbring our children. Hussein has been especially critical in raising our son Khalid who is in the autism spectrum. The older he grew the more attached he became to his dad. Today Khalid is 100% dependent on his dad for his day-to-day activities. He is the one who takes him back and forth to his classes at Century College, takes him to the YMCA daily for his gym activities and takes him for karate classes 3 times a week. Khalid has

become too big for me to be able to physically handle and restrain anymore and now only accepts his dad to help him.

Your honor, my husband Hussein suffers from severe hypertension and his extremely high blood pressure requires daily medication to manage and control. His dad died in 2015 because of a blood clot caused by high blood pressure and his doctors have told him that he stands a risk of suffering from stroke if he doesn't manage his blood pressure.

Your honor, my husband Hussein dedicated more than 20 years to raise his family and work hard to uplift the lives of others who were less fortunate than us. He knows he made a very big mistake and he pled guilty and took full responsibility for his actions. I see his remorse every single day and I also see his desire to correct his actions and make sure that something like that never happens again in his life. Your honor, as you decide what is the right penalty for his actions, I am begging you to consider who Hussein is to us, his family. We need him, your honor. He is the rock that keeps us all together. And especially our son Khalid. Your honor, I fear that he will be taken by social service because I will be physically unable to handle him and meet his needs. Please do not take him away from us your honor.

Thank you again your honor. For your kindness to read my letter. And for your willingness to consider the totality of what's at stake when you consider the appropriate sentencing for my husband Hussein.

Yours Truly,

Sofia Aden